## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## CHATTANOOGA DIVISION

| | |
|---|---|
| SHERRIE DOWDY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No.: |
| vs. | ) |
| | ) Jury Demand |
| MEMORIAL HEALTH CARE SYSTEM, | ) |
| INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. (ADEA), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq. (Title VII), Plaintiff files this lawsuit against Defendant and alleges the following:

### Parties and Jurisdiction

1. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2. Defendant is a Kentucky Corporation that does business in Chattanooga, Tennessee. Its principal address is 2525 DeSales Avenue, Chattanooga, Tennessee, 37404. Its registered agent for service of process in Tennessee is CT Corporation System, 300 Montvue Road, Knoxville, Tennessee, 37919.

3. Defendant operates CHI Memorial hospital in Chattanooga, Tennessee.

4. At all times material, Defendant had well over 20 employees.

5. Plaintiff is a 72-year-old African-American female who resides in Chattanooga, Tennessee.

6.     Plaintiff was employed by Defendant at CHI Memorial hospital (CHI) from April of 2005 until she was terminated on September 18, 2019.  Plaintiff was employed in the position of certified sterile processor.  She was the oldest employee in the sterile processing department, which had approximately 65 employees in it.

7.     Plaintiff generally received good evaluations during her 14 years of employment leading up to her termination.  She was well-qualified for her position.

8.     Beginning in around May or June of 2019, however, CHI hired a new manager of sterile processing, Jennifer McNeely, who became Plaintiff's new direct supervisor.  Ms. McNeely is white and is much younger than Plaintiff.  Ms. McNeely began to call Plaintiff into her office every week to criticize her.

9.     Ms. McNeely asserted that other employees were complaining that Plaintiff was being "mean" and that she had bad "body language."  Plaintiff eventually learned that these complaints about her were being made by two employees named Lisa Allen and Courtney Case, who are also white and who were probably in their late 30s. Ms. Allen had only been employed at CHI since around October of 2018, and Ms. Case became employed in approximately June of 2019.  Ms. McNeely further stated to Plaintiff that Plaintiff was "old school" and told her that "maybe the young people don't understand you."  None of these allegations about Plaintiff were true, and she had been conducting herself in the same appropriate manner that she had for the previous 14 years.

10.     Ms. McNeely put Plaintiff on a work improvement plan from July 31, 2019 through August 31, 2019.  This plan, which was put in writing, asserted that Plaintiff's communications with other employees and day-to-day interactions needed to be improved. Plaintiff successfully completed this plan, and Ms. McNeely signed the plan indicating that she

had successfully completed it. The director of surgery also signed off on the successful completion of the plan.

11. On September 18, 2019, Ms. McNeely called Plaintiff in for a meeting. Mandy Coots from human resources was also in the meeting, along with another person. During the meeting, Ms. McNeely terminated Plaintiff's employment. She advised Plaintiff that "you've reverted back to your old ways." She alleged that others had complained about Plaintiff again, but she would not say who complained or the nature of their alleged complaints. Again, Plaintiff had done nothing wrong and had been conducting herself and performing her job in the same manner that she had for 14 years.

12. Defendant initially placed a temporary employee in Plaintiff's position who was a white male in his early 30's. This employee was not even certified as a sterile processor, and had only been at the hospital for around six months. He held the position for a few months, before Plaintiff's position was filled with a permanent replacement who was a white male in his 50's.

13. If Plaintiff had not been terminated by Defendant, she intended to work there until at least age 75. She has sustained a substantial amount of lost wages and benefits as a result of her termination, and she will continue to sustain lost wages in the future.

**Violations of the ADEA**

14. Pursuant to Fed. R. Civ. P. 10(c), Plaintiff adopts by reference the allegations contained in paragraphs 1-13 above.

15. By terminating Plaintiff's employment, Defendant discriminated against Plaintiff on the basis of her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. (ADEA). Plaintiff's age was a motivating and determinative factor in Plaintiff's termination.

16. Defendant's conduct in terminating Plaintiff and replacing her with a younger

employee establishes a prima facie case of age discrimination in violation of the ADEA.

17. As a result of Defendant's violation of the ADEA, Plaintiff sustained and is entitled to recover substantial economic damages, including back pay, front pay, and loss of benefits.

18. Defendant's violation of the ADEA was willful, entitling Plaintiff to liquidated damages.

19. Plaintiff is entitled to an award of statutory attorneys' fees and costs pursuant to the ADEA.

### Violations of Title VII—Racial Discrimination

20. Pursuant to Fed. R. Civ. P. 10(c), Plaintiff adopts by reference the allegations contained in paragraphs 1-19 above.

21. By terminating Plaintiff's employment, Defendant discriminated against Plaintiff on the basis of her race in violation of Title VII, and specifically 42 U.S.C. § 2000e-2(a). Plaintiff's race as an African-American was a motivating and determinative factor in Plaintiff's termination.

22. Defendant's conduct in replacing Plaintiff with a white male employee establishes a prima facie case of racial discrimination in violation of Title VII.

23. As a result of Defendant's violation of Title VII, Plaintiff sustained and is entitled to recover substantial economic damages, including back pay, front pay, and loss of benefits.

24. As a result of Defendant's violation of Title VII, Plaintiff sustained and is entitled to recover compensatory damages, including damages for emotional distress and pain and suffering.

25. Defendant's violation of Title VII was malicious and intentional, or in reckless disregard for Plaintiff's legal rights, entitling Plaintiff to punitive damages.

26.     Plaintiff is entitled to an award of statutory attorneys' fees and costs pursuant to Title VII.

## Exhaustion of Remedies

27.     On July 7, 2020, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).

28.     The EEOC issued Plaintiff a Notice of Right to Sue, which it mailed to Plaintiff on January 7, 2021, and which Plaintiff received several days later.

## Prayer for Relief

WHEREFORE, Plaintiff prays for a judgment against Defendant for damages that include the following:

(a) back pay;

(b) front pay;

(c) damages for loss of benefits;

(d) compensatory damages, including damages for emotional distress, mental anguish, pain and suffering, loss of enjoyment of life, and harm to reputation;

(e) liquidated damages;

(f) punitive damages;

(g) prejudgment interest;

(h) statutory attorney's fees;

(i) the costs and expenses of this action; and

(j) all other general legal and equitable relief to which she may be entitled.

Plaintiff further demands a jury to try the issues when joined.

Respectfully submitted,

/s/ R. Scott Jackson, Jr.
R. Scott Jackson, Jr. (TN 13839)
4525 Harding Road, Suite 200
Nashville, TN 37205
(615) 313-8188
(615) 313-8702 (facsimile)
rsjackson@rsjacksonlaw.com


/s/ John McCown
John McCown (GA 486002)
Warren & Griffin, P.C.
300 West Emery Street, Suite 108
Dalton, GA 30720
(706) 529-4878
(706) 529-3890 (facsimile)
john.mccown@warrenandgriffin.com